RECEIPT # 
AMOUNT $ 250
SUMMONS ISSUED Y-6
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK. 
DATE 8-15-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WASHINGTON MUTUAL BANK,

Plaintiff,

v.

DAN W. ADAMS, HEIDI K. ADAMS, UNITED STATES OF AMERICA, COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF REVENUE, DELTA FUNDING CORPORATION and BENEFICIAL MASSACHUSETTS INC.,

Defendants.

CIVIL ACTION NO. ____

05-11686 WGY

MAGISTRATE JUDGE Dein

**COMPLAINT**

The plaintiff Washington Mutual Bank ("Washington Mutual") brings this action against defendants Dan W. Adams, Heidi K. Adams, the United States of America, the Commonwealth of Massachusetts Department of Revenue, Delta Funding Corporation and Beneficial Massachusetts Inc. seeking to subrogate certain liens and to restore Washington Mutual's first security mortgage position on property owned by Dan W. and Heidi K. Adams located in Sandwich, Barnstable County, Massachusetts. Washington Mutual also seeks to recover its attorneys' fees and costs for having to bring this action from defendants Dan W. and Heidi K. Adams. For its Complaint against the defendants, Washington Mutual states as follows:

PARTIES

1. The plaintiff Washington Mutual Bank ("Washington Mutual") is a federally chartered savings bank with a principal place of business at 1201 Third Avenue, Seattle, Washington 98101.

2. Upon information and belief, the defendant Dan W. Adams ("Mr. Adams") is an individual who resides at 15 Highfield Drive, Sandwich, Barnstable County, Massachusetts (the "Property").

3. Upon information and belief, the defendant Heidi K. Adams ("Mrs. Adams") is an individual who resides at 15 Highfield Drive, Sandwich, Barnstable County, Massachusetts. Mr. Adams and Mrs. Adams are husband and wife.

4. The United States of America, Department of Treasury – Internal Revenue Service (the "IRS") has been named as a defendant in this action as a result of a federal tax lien levied against Mr. Adams that was recorded in the chain of title to the Property at the Barnstable County Registry of Deeds.

5. The Commonwealth of Massachusetts Department of Revenue ("DOR") has been named as a defendant in this action as a result of a state tax lien levied against Mr. Adams that was recorded in the chain of title to the Property at the Barnstable County Registry of Deeds.

6. The defendant Delta Funding Corporation ("Delta") is a corporation having a place of business at 1000 Woodbury Road, Suite 200, Woodbury, New York 11797. Delta has been named as a defendant in this action as a result of a mortgage in its favor that was recorded in the chain of title to the Property at the Barnstable County Registry of Deeds.

7. The defendant Beneficial Massachusetts Inc. ("Beneficial") is a corporation organized under the laws of Delaware having a place of business at 338 Main Street, Hyannis,

Massachusetts 02601. Beneficial has been named as a defendant in this action as a result of a mortgage in its favor that was recorded in the chain of title to the Property at the Barnstable County Registry of Deeds.

JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2410(a), as this dispute involves a suit involving federal tax liens under the internal revenue laws of the United States, and pursuant to 28 U.S.C. § 2201(a), as there is an actual controversy between the parties for which Washington Mutual seeks a declaration by this Court of the rights and legal relations of the parties.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district, and the property that is the subject of the action is situated in this district.

FACTS COMMON TO ALL COUNTS

10. Mr. Adams and Mrs. Adams are the record owners of the Property, holding title as husband and wife, tenants by the entirety, by means of a Quitclaim Deed from Mr. Adams dated August 1, 1998. On September 4, 1998, the Quitclaim Deed was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 738,690. A copy of the Quitclaim Deed is attached hereto as Exhibit 1.

11. On or about July 29, 1999, Mr. Adams and Mrs. Adams executed a mortgage on the Property in favor of Delta (the "Delta Mortgage"). On August 6, 1999, the Delta Mortgage was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 774,786. A copy of the Delta Mortgage is attached hereto as Exhibit 2.

12. On or about June 25, 2002, Mr. Adams and Mrs. Adams executed a Promissory

Note (the "Note"), in the principal amount of $324,850.00, and a mortgage on the Property in favor of Long Beach Mortgage Company ("Long Beach"), for which Washington Mutual is the servicing entity (the mortgage in favor of Long Beach will be referred to herein as the "Washington Mutual Mortgage"). On July 2, 2002, the Washington Mutual Mortgage was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 877,425. A copy of the Note and Washington Mutual Mortgage are attached hereto as Exhibit 3.

13. On or about June 25, 2002, Delta executed a Subordination Agreement in favor of Long Beach, in which the Delta Mortgage was subordinated to the Washington Mutual Mortgage in the chain of title to the Property (the "Delta Subordination Agreement"). On July 24, 2002, the Delta Subordination Agreement was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 879,406. A copy of the Delta Subordination Agreement is attached hereto as Exhibit 4.

14. On or about November 15, 2002, Mr. Adams and Mrs. Adams executed a mortgage on the Property in favor of Beneficial (the "Beneficial Mortgage"). On November 26, 2002, the Beneficial Mortgage was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 895,117. A copy of the Beneficial Mortgage is attached hereto as Exhibit 5.

15. On or about October 1, 2003, the IRS, through its Boston office, prepared and signed a Notice of Federal Tax Lien in the name of Mr. Adams, against the Property, in the amount of $241,283.47 (the "Notice of Federal Tax Lien"). On October 8, 2003, the Notice of Federal Tax Lien was recorded at the Barnstable County Registry of Deeds in Book Number 17766, at Page Number 155. A copy of the Notice of Federal Tax Lien is attached hereto as

Exhibit 6.

16.     In or about October 2004, the DOR prepared a Notice of Massachusetts Tax Lien in the name of Mr. Adams, against the Property, in the amount of $7,072.03. On October 21, 2004, the Notice of Massachusetts Tax Lien was recorded at the Barnstable County Registry of Deeds in Book Number 19157, at Page Number 133. A copy of the Notice of Massachusetts Tax Lien is attached hereto as Exhibit 7.

17.     On or about March 9, 2005, Mr. Adams and/or Mrs. Adams requested a payoff statement from Washington Mutual for the Note and Washington Mutual Mortgage.

18.     After receiving the payoff statement, Mr. Adams and/or Mrs. Adams sent Washington Mutual a fraudulent payoff check in the amount of $316,339.23 that they intended to use to pay off the balance owed on the Note and Washington Mutual Mortgage.

19.     The fraudulent check was dated March 10, 2005, and was identified as an International Bill of Exchange. The fraudulent check did not have any bank routing or account numbers imprinted on the bottom of the check.

20.     Washington Mutual employees recognized the March 10, 2005 check to be a fraudulent check, and returned the check to Mr. Adams and/or Mrs. Adams without processing the payoff request.

21.     On March 18, 2005, Mr. Adams and/or Mrs. Adams requested a second payoff statement from Washington Mutual for the Note and Washington Mutual Mortgage.

22.     On or about March 21, 2005, Washington Mutual issued a second payoff statement to Mr. Adams and/or Mrs. Adams.

23.     On or about March 25, 2005, Mr. Adams and/or Mrs. Adams sent Washington Mutual a second fraudulent check in the amount of $336,943.44 that they intended to use to pay

off the balance owed on the Note and Washington Mutual Mortgage.

24. The second fraudulent check was identified as an International Bill of Exchange, and did not have any bank routing or account numbers imprinted on the bottom of the check.

25. The second fraudulent check was signed by Mr. Adams and included the Adams' Washington Mutual mortgage loan account number and the Property address.

26. Mr. Adams and/or Mrs. Adams sent the second fraudulent check to Washington Mutual with the intent to pay off the balance owed on the Note and Washington Mutual Mortgage, and to obtain a fraudulent mortgage discharge.

27. The second fraudulent check was not detected by Washington Mutual employees, and was processed as a payoff of Mr. Adams and Mrs. Adams' mortgage loan account in the usual course of Washington Mutual's business operations.

28. Washington Mutual's check processing agent, Integrated Payments Systems, later advised Washington Mutual that the second fraudulent check was not negotiable because it did not contain a valid account number.

29. After being advised of the fraudulent nature of the check, Washington Mutual reversed the payoff in its records and reinstated Mr. Adams and Mrs. Adams' mortgage loan account in its records.

30. Washington Mutual immediately notified Mr. Adams and Mrs. Adams that the second payoff check was fraudulent, and that their mortgage loan account was being re-established in Washington Mutual's records.

31. The initial processing of the proceeds of the second fraudulent payoff check to Mr. Adams and Mrs. Adams' Washington Mutual mortgage loan account triggered the preparation and filing of a mortgage discharge of the Washington Mutual Mortgage (the

"Washington Mutual Mortgage Discharge"). On April 20, 2005, the Washington Mutual Mortgage Discharge was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 999,369. A copy of the Washington Mutual Mortgage Discharge is attached hereto as Exhibit 8.

32. By the time Washington Mutual became aware that the second payoff check was fraudulent, the Washington Mutual Mortgage Discharge had already been recorded at the Barnstable County Registry of Deeds.

33. Just prior to the filing of the Washington Mutual Mortgage Discharge at the Barnstable County Registry of Deeds, which was obtained by Mr. Adams and/or Mrs. Adams through fraudulent conduct, the priority order of liens on the Property was as follows:

| Priority Position | Holder | Instrument(s) |
|---|---|---|
| 1 | Washington Mutual | Washington Mutual Mortgage / Delta Subordination Agreement |
| 2 | Delta | Delta Mortgage / Delta Subordination Agreement |
| 3 | Beneficial | Beneficial Mortgage |
| 4 | IRS | Notice of Federal Tax Lien |
| 5 | DOR | Notice of Massachusetts Tax Lien |

34. As a result of Mr. Adams and/or Mrs. Adams' fraudulent conduct and the recording of the Washington Mutual Mortgage Discharge at the Barnstable County Registry of Deeds, Washington Mutual has lost its first secured priority position in the Property.

35. On May 25, 2005, Washington Mutual filed a Verified Complaint against Mr. Adams and Mrs. Adams in the Barnstable County, Massachusetts Superior Court, which was assigned Civil Action No. 2005-00287 (the "Superior Court Action"). In the Superior Court

action, Washington Mutual seeks a judgment against Mr. and Mrs. Adams for all sums due on the Note, including principal, accrued interest and attorneys' fees and costs of collection, among other relief.

36. Together with its Verified Complaint in the Superior Court Action, Washington Mutual also filed an Emergency Ex Parte Motion for Real Estate Attachment on the Property. After a hearing held on May 25, 2005, the Barnstable Superior Court (Rufo, J.) issued a Finding and Ex Parte Order for Approval of Attachment on the Property in favor of Washington Mutual (the "Superior Court Attachment Order"). A copy of the Superior Court Attachment Order is attached hereto as Exhibit 9.

37. On May 25, 2005, the Clerk of the Barnstable Superior Court prepared a Writ of Attachment against the Property of Mr. Adams and Mrs. Adams, in the amount of $345,000, in favor of Washington Mutual (the "Washington Mutual Attachment"). On May 26, 2005, the Washington Mutual Attachment was recorded at the Barnstable County Registry of Deeds, Registered Land Division, as Document Number 1002694. A copy of the Washington Mutual Attachment is attached hereto as Exhibit 10.

38. Following the filing of the Washington Mutual Attachment at the Barnstable County Registry of Deeds, the priority order of liens on the Property is as follows:

| **Priority Position** | **Holder** | **Instrument(s)** |
| --- | --- | --- |
| 1 | Delta | Delta Mortgage |
| 2 | Beneficial | Beneficial Mortgage |
| 3 | IRS | Notice of Federal Tax Lien |
| 4 | DOR | Notice of Massachusetts Tax Lien |
| 5 | Washington Mutual | Washington Mutual Attachment |

39. The defendants named in this action other than Mr. Adams and Mrs. Adams, specifically the IRS, the DOR, Delta and Beneficial, were not named as defendants in the Superior Court Action. In this action, Washington Mutual seeks a declaratory judgment and equitable subrogation to restore the Washington Mutual Mortgage to the first secured priority position on the Property.

40. Simultaneous with the filing of this action, Washington Mutual intends to file a motion to stay the Superior Court Action pending the reinstatement of the Washington Mutual Mortgage or similar relief in this action, and possible eventual foreclosure of its mortgage.

COUNT I
(Equitable Subrogation against all Defendants)

41. Washington Mutual incorporates by reference the allegations of paragraphs 1 through 40 as if set forth in full herein.

42. The Washington Mutual Mortgage was in the first secured priority position in the chain of title to the Property prior to the fraudulent conduct committed by Mr. Adams and/or Mrs. Adams as described herein.

43. The Washington Mutual Mortgage Discharge was obtained through fraudulent conduct committed by Mr. Adams and/or Mrs. Adams and/or by mistake.

44. Each of the defendants other than Mr. and Mrs. Adams currently enjoys a superior priority position to that of Washington Mutual in the chain of title to the Property as a direct result of the fraudulent conduct committed by Mr. Adams and/or Mrs. Adams and/or by its mistake in recording the Washington Mutual Mortgage Discharge.

45. Washington Mutual has been harmed by the fraudulent conduct committed by Mr. Adams and/or Mrs. Adams in obtaining the Washington Mutual Mortgage Discharge, and/or by its mistake in recording the Washington Mutual Mortgage Discharge.

46. Each of the defendants other than Mr. and Mrs. Adams has benefited by the fraudulent conduct committed by Mr. Adams and/or Mrs. Adams in obtaining the Washington Mutual Mortgage Discharge, and/or by its mistake in recording the Washington Mutual Mortgage Discharge.

47. It would be inequitable to fail to restore Washington Mutual to the first secured priority position in the Property.

WHEREFORE, Washington Mutual prays that this Court enter a judgment for Washington Mutual and against all defendants equitably subrogating each of their security interests in the Property to a position junior to that of Washington Mutual as the same existed prior to the fraudulent conduct and/or mistake described herein.

COUNT II
(Declaratory Judgment against all Defendants)

48. Washington Mutual incorporates by reference the allegations of paragraphs 1 through 47 as if set forth in full herein.

49. An actual controversy exists between Washington Mutual and all named defendants as to the proper priority position for each of the liens recorded at the Barnstable County Registry of Deeds in the chain of title to the Property.

50. Washington Mutual has been harmed by the discharge of the Washington Mutual Mortgage and the current order of priority of liens in the chain of title to the Property, by which

the Washington Mutual Attachment is in a position junior to the positions of Delta, Beneficial, the IRS, and the DOR.

51. This court has the power to declare the rights and legal interests of the parties with respect to this dispute regarding the security interests in the chain of title to the Property pursuant to 28 U.S.C. §§ 2201(a) and 2410(a).

WHEREFORE, Washington Mutual prays that this Court enter a declaratory judgment that Washington Mutual be restored to its first secured priority position in the chain of title to the Property, and enter an appropriate order suitable for filing at the Barnstable County Registry of Deeds that will clarify the priority order of liens on the Property.

COUNT III

(Breach of Contract/Attorneys' Fees and Costs against Mr. Adams and Mrs. Adams)

52. Washington Mutual incorporates by reference the allegations of paragraphs 1 through 51 as if set forth in full herein.

53. The Note and Washington Mutual Mortgage contain a provision by which borrowers Mr. Adams and Mrs. Adams are responsible for reimbursing Washington Mutual for all reasonable attorneys' fees and court costs incurred for any legal action deemed necessary by Washington Mutual to preserve its rights and security interest in the Property.

54. Mr. Adams and Mrs. Adams have defaulted on their payment obligations under the Note and Washington Mutual Mortgage, and thereby have breached their contracts with Washington Mutual.

55. Washington Mutual has deemed it necessary to institute this legal action to preserve its rights and security position in the Property, which action became necessary as a result of the fraudulent conduct committed by Mr. Adams and/or Mrs. Adams.

56. Washington Mutual has been harmed by the breaches of contract and fraudulent conduct committed by Mr. Adams and Mrs. Adams.

WHEREFORE, Washington Mutual prays that this Court enter judgment for Washington Mutual and against Mr. Adams and Mrs. Adams in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Washington Mutual Bank respectfully requests that this Court:

A. Enter judgment for Washington Mutual and against all defendants on Counts I and II of the Complaint;

B. Enter an Order suitable for filing at the Barnstable County Registry of Deeds in the chain of title to the Property by which Washington Mutual is restored to its first secured priority position on the Property;

C. Enter judgment for Washington Mutual and against defendants Mr. Adams and Mrs. Adams on Count III of the Complaint, and award Washington Mutual its attorneys' fees and costs in bringing this action; and

D. Award Washington Mutual such other relief as this Court deems just and proper.

WASHINGTON MUTUAL BANK,
By its Attorneys,

Donn A. Randall, BBO #631590
J. Patrick Kennedy, BBO #565778
Mary Ellen Manganelli, BBO #641658
Bulkley, Richardson and Gelinas, LLP
One Post Office Square, Suite 3700
Boston, MA 02109
(617) 368-2500

Dated: August 15, 2005
304181-1

DOC:738,690 09-04-98 10:59
CTF#:150012
BARNSTABLE LAND COURT REGISTRY

# QUITCLAIM DEED

I, Dan W. Adams, of Sandwich, Massachusetts

*IN CONSIDERATION OF ONE AND NO/100 DOLLAR ($1.00) Paid*

Grant to **DAN W. ADAMS and HEIDI K. ADAMS,** Husband and Wife, as Tenants by the Entirety, of 15 Highfield Drive, Sandwich, Massachusetts 02563

*WITH QUITCLAIM COVENANTS*

The land together with the buildings and improvements thereon, situated in the Town of Sandwich (South), County of Barnstable and Commonwealth of Massachusetts, being bounded and described as follows:

*Lot 108*

*Land Court Subdivision Plan 39567-C (Sheet 4)*

No fee in Highfield Drive is hereby conveyed.

Said parcel is conveyed subject to and with the benefit of covenants, restrictions, reservations and agreements set forth in Declaration of Rolling Ridge Farm dated October 7, 1982 being duly filed with said Deeds as Document No. 301,354; as amended by instruments duly recorded with said Deeds as Document Nos. 311,585; 332,036; 504,364; 541,941 and 619,134.

Said premises are also conveyed subject to an easement in favor of New England Telephone and Telegraph Company, et al dated September 21, 1983 being duly filed with said Deeds as Document No. 321,319.

For title reference see Certificate of Title No. 144,746.

EXECUTED AS A SEALED INSTRUMENT THIS 31st DAY OF AUGUST, 1998

Locus: 15 Highfield Dr., Sandwich

Dan W. Adams

COMMONWEALTH OF MASSACHUSETTS

Barnstable, ss August 31, 1998

Then personally appeared the above named Dan W. Adams, as aforesaid and acknowledged the foregoing instrument to be his free act and deed before me,

My Commission Expires: 10/11/2000

Notary Public John Clark Stephenson

Sub. 39567-C (Sh 4)

BARNSTABLE REGISTRY OF DEEDS

DOC:774,786 08-06-99 08:35

BARNSTABLE LAND COURT REGISTRY

# MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that DAN W. ADAMS and HEIDI K. ADAMS of 15 Highfield Drive, Sandwich,, Barnstable County, Massachusetts, herein called "Mortgagor" which expression shall include their heirs, executors, successors and assigns, for consideration paid, grant to DELTA FUNDING CORPORATION, of 1000 Woodbury Road, Suite 200, Woodbury, new York, 11797,

with MORTGAGE COVENANTS to secure the full payment and performance of all obligations of the Mortgagor to Mortgagee as provided in one certain Note dated July 28, 1999 in the original principal amount of Fifty-Five Thousand Dollars ($55,000.00) which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2029, and also to secure all covenants and agreements herein contained or referred to on the part of the Mortgagor to be kept and performed, collectively hereafter also referred to as "Obligations" that certain parcel or parcels of land together with all buildings, together with all fixtures and appurtenances thereto and improvements thereon, if any, as more particularly described in Exhibit "A" annexed hereto and made a part hereof, and known as 15 Highfield Drive, Sandwich, Massachusetts 02563 hereinafter called the "Mortgaged Premises."

This mortgage is upon the STATUTORY CONDITION and upon the further condition that all covenants and agreements on the part fully kept and performed, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

The Mortgagor hereby assigns to the Mortgagee all rents, profits and payments which from time to time hereafter may become due to the Mortgagor in connection with the Mortgaged Premises or any part thereof and all deposits held as security for or any part thereof, now or hereafter held, and the Mortgagor covenants not to assign any such rents, profits, payments or deposits to others, nor, without the written permission of the Mortgagee, to accept in advance any rents, profits or payments covering a period in excess of one (1) month, provided, however, that prior to any default on the part of the Mortgagor, Mortgagor shall collect and receive all rents, profits, payments or deposits as trustee for the benefit of Mortgagor or Mortgagee.

The Mortgagor covenants to pay when due all taxes, charges, assessments, water rates, sewer use charges and other charges which may form the basis of a lien or expense upon or in connection with the Mortgaged Premises or any interest therein or upon any of the Obligations secured hereby and to pay when due all interest and principal payments due and payable to any holder or any mortgage to which this mortgage is subordinate and to perform all covenants and agreements of the mortgagor in such mortgage.

The Mortgagor covenants to keep the buildings and other improvements, if any, now or hereafter on the Mortgaged Premises

Sand 108 39567-C (SK 4)

premises or used therewith: portable or sectional buildings, furnaces, heaters, ranges, mantels, gas and electric light fixtures, refrigerators, refrigeration equipment, ventilating and air condition equipment, garbage incinerator receptacles and disposals, door bells and alarm systems, built-in cases, cabinets, counters and drawers, screens, screen doors, awnings, and all other fixtures or equipment of whatever kind and nature at present contained in said buildings or placed therein prior to the full payment and discharge of this Mortgage.

The Mortgagee is hereby authorized to apply the proceeds of any insurance recovered by reasons of any loss to the satisfaction of the Obligations secured hereby, whether or not this mortgage or any of the Obligations secured hereby are in default.

The use of the singular herein shall include the plural, and the use of the plural, shall include the singular, and the use of the masculine gender shall include the feminine and the use of the feminine shall include the masculine.

EXECUTED as an instrument under seal this 28th day of July 1999.

Dan W. Adams

Heidi K. Adams

COMMONWEALTH OF MASSACHUSETTS

Barnstable, ss July 28, 1999

Then personally appeared the above-named Dan W. Adams and Heidi K. Adams and acknowledged the foregoing to be their free act and deed before me,

Notary Public
My Commission Expires:
March 8, 2002

EXHIBIT A

The land together with the buildings and improvements thereon situated in the Town of Sandwich (South), County of Barnstable and Commonwealth of Massachusetts, being bounded and described as follows:

LOT 108

Land Court Subdivision Plan 39567-C (Sheet 4)

No fee in Highfield Drive is conveyed.

Said parcel is conveyed subject to and with the benefit of covenants, restrictions, reservations and agreements set forth in Declaration of Rolling Ridge Farm dated October 7, 1982, being duly filed with said Deeds as Document No. 301,354; as amended by instruments duly recorded with said Deeds as Document Nos. 311,585; 332,036; 504,364; 541,941; and 619,134.

Said premises are also conveyed subject to an easement in favor of New England Telephone and Telegraph Company, et al dated September 21, 1983, being duly filed with said Deeds as Document No. 321,319.

For our title see Certificate of Title No. 150012.

BARNSTABLE REGISTRY OF DEEDS

LOAN NO. 4458521-30371

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

June 26, 2002 [Date] ORANGE [City] CA [State]

15 HIGHFIELD DRIVE
SANDWICH, MA 02563
[Property Address]

FNOTE

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 224,850.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is LONG BEACH MORTGAGE COMPANY. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.150 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on August 1, 2002. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on July 1, 2032, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 1093, Northridge, CA 91328 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 2,417.70. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of July, 2004, and on that day every 6th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal*, or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

. If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and Three Fourths percentage point(s) ( 5.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

LOAN NO. 4468621-30371

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.150 % or less than 8.150 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than One percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.150 %, which is called the "Maximum Rate" or less than 8.150 % which is called the "Minimum Rate".

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within 3 years from the date of execution of the Security Instrument, I make a full prepayment, I will pay a prepayment charge subject to the following limitations: (i) if I make a full prepayment for the purpose of refinancing my loan with another financial institution, the prepayment charge will be equal to three (3) months' interest, and (ii) if I make a full prepayment for any other purpose, the prepayment charge will be equal to the lesser of three (3) months' interest or the remaining balance of the first year's interest.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

LOAN NO. 4456521-30371

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument provides as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead provide as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

without prejudice

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Dan W Adams

______________________ (Seal) -Borrower ______________________ (Seal) -Borrower

DAN W ADAMS

______________________ (Seal) -Borrower ______________________ (Seal) -Borrower

[Sign Original Only]

Loan No. 4456521-30371

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made on this 25th day of June, 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to :

LONG BEACH MORTGAGE COMPANY

(the"Lender") of the same date and covering the property described in the Security Instrument and located at:

15 HIGHFIELD DRIVE
SANDWICH, MA 02563

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE AND TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 8.150 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**1. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(a) Change Dates**

The initial fixed interest rate will change to an adjustable interest rate on the first day of July, 2004, and on the first day of the month every 6th month thereafter. Each date on which the adjustable interest rate could change is called a "Change Date."

**(b) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal*, or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

**(c) Calculation of Changes**

Before each Change Date, the Lender will calculate my new interest rate by adding Five and Three Fourths percentage point(s) ( 5.750 %) to the Current Index. The Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 1(d) on the following page, this rounded amount will be the new interest rate until the next Change Date.

DWA
NKA



Loan No. 4456521-30371

The Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance as of the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new monthly payment.

(d) Limits on Interest Rate Changes
The interest rate at the first Change Date will not be greater than 9.150 % or less than 8.150 %. Thereafter, the adjustable interest rate will never be increased or decreased on any single Change Date by more than One percentage points ( 1.000 %) from the rate of interest applicable during the preceding 6 months. The adjustable interest rate will never be greater than 14.150 %, which is called the "Maximum Rate" or less than 8.150 % which is called the "Minimum Rate".

(e) Effective Date of Changes
Each new adjustable interest rate will become effective on each Change Date. The amount of each new monthly payment will be due and payable on the first monthly payment date after the Change Date until the amount of the monthly payment changes again.

(f) Notice of Changes
The Lender will deliver or mail a notice of any changes in the adjustable interest rate and the amount of the new monthly payment to the Borrower before the effective date of any change. The notice will include information required by law to be given to the Borrower and also the title and telephone number of a person who will answer any questions regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 17 of the Security Instrument provides as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 17 of the Security Instrument contained in Section B(1) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if

DWA

Loan No. 4456521-30371

exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

without prejudice

Dan W Adams (Seal) DAN W ADAMS -Borrower

_______________ (Seal) -Borrower

Deidre K. Adams (Seal) -Borrower

_______________ (Seal) -Borrower

[Sign Original Only]

LONG BEACH [illegible] COMPANY
P.O. BOX 20108
STOCKTON, CA 95202

LOAN NO. 4456521-30371

Certified true and exact copy of the original document.

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on June 25, 2002. The mortgagor is DAN W ADAMS, A MARRIED MAN XXXXXXXXXX HEIDI K. ADAMS A MARRIED WOMAN

("Borrower"). This Security Instrument is given to LONG BEACH MORTGAGE COMPANY

which is organized and existing under the laws of the State of Delaware, and whose address is 1100 TOWN & COUNTRY ROAD, ORANGE, CA 92868 ("Lender"). Borrower owes Lender the principal sum of Three Hundred Twenty Four Thousand Eight Hundred Fifty and no/100 Dollars (U.S. $ 324,850.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 1, 2032. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in BARNSTABLE County, Massachusetts:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 15 HIGHFIELD DRIVE SANDWICH [Street, City], Massachusetts 02563 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard o[illegible] Insurance.** [illegible]rower shall keep the improvements [illegible] existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be ... ...ured, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the**

notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

- [X] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] V.A. Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider
- [ ] Other(s) [specify]
- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

without prejudice

Witnesses:

Dan W Adams (Seal)
DAN W ADAMS -Borrower

Heidi K. Adams (Seal)
Heidi K Adams. -Borrower

(Seal) -Borrower

(Seal) -Borrower

COMMONWEALTH OF MASSACHUSETTS, County ss: Barnstable

On this 25th day of June, 2002, before me personally appeared Dan W Adams + Heidi K Adams, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires: 11/8/2007.

Notary Public

JEFFREY G. STONE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
EXPIRES: NOVEMBER 8, 2007

File No. D02-3337GV

EXHIBIT A – Property Description

Property Address: 15 Highfield Drive, Sandwich, MA 02563

Property located at: M: 20 L: 155

The land together with the buildings and improvements thereon, situated in the Town of Sandwich (South), County of Barnstable and Commonwealth of Massachusetts, being bounded and described as follows:

Lot 108
Land Court Subdivision Plan 39567-C (Sheet 4)

For title reference see deed dated 8/31/1998, and recorded on 9/4/1998 at the Barnstable Registry of Deeds in Document #738690, CTF #150012.

Chicago Title Insurance Company

JUN-26-02 03:08PM FROM-COLONIAL TITLE ESCROW +15086880127 T-492 P 02/02 F-023

Doc:879,406 07-24-2002 11:31
BARNSTABLE LAND COURT REGISTRY

## SUBORDINATION AGREEMENT

Know all men by these presents, that Delta Funding Corporation, holder of a Mortgage in the principal amount of $55,000.00 recorded on August 6, 1999, with the Barnstable County Registry of Deeds, as Document No. 774786. Delta Funding Corporation has agreed herein to accept settlement on this mortgage in the amount of $40,000.00; accepting a payment of $25,000.00 and Subordinating $15,000.00 at a monthly payment of $150.00 a month at an interest of 7% the first payment to begin on August 1, 2002 and every month thereinafter.

From: DAN W. ADAMS AND HEIDI K. ADAMS

Hereby agree that said mortgage and the obligations secured thereby are hereby subordinated and junior in right to a Mortgage

From: DAN W. ADAMS AND HEIDI K. ADAMS

To: LONG BEACH MORTGAGE COMPANY

Dated: 6-25-2002, in the principal amount of $324,850.00, and recorded with said Registry of Deeds herewith. In all other respects, the said mortgage shall remain in full force and effect.

Doc # 877,425 cert # 150012

IN WITNESS WHEREOF, the said Delta Funding Corporation has caused its corporate seal to be hereto affixed and these presents to be signed in its name.

Delta Funding Corporation

By: [signature]

Print Name: David Forman

Title: Asst Vice President

Commonwealth of Massachusetts

County ~~Barnstable~~ NASSAU, ss
State of NY

Date: 7-3-02

Then personally appeared the above-named David Forman, As Asst Vice President of Delta Funding Corporation and acknowledged the foregoing instrument to be signed on behalf of said Delta Funding Corporation and acknowledged said instrument to be his/hers free act and deed, individually Before me,

[signature]

Notary Public

SEAL

My Commission Expires: MAY 31, 2003

WILLIAM J. HORAN
NOTARY PUBLIC, State of New York
No. 30-4664035
Qualified in Nassau County
Commission Expires May 31, 2003

BARNSTABLE REGISTRY OF DEEDS

Sand M 774,786 to M 877,425

Barnstable D02-3337

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

521706

# MORTGAGE

Doc:895.117 11-26-2002 9:31
BARNSTABLE LAND COURT REGISTRY

[ ] IF BOX IS CHECKED, THIS MORTGAGE SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this 15TH day of NOVEMBER 20 02, between the Mortgagor, DAN W. ADAMS AND HEIDI K. ADAMS, H/W/T/B/E

(herein "Borrower"), and Mortgagee BENEFICIAL MASSACHUSETTS INC., a corporation organized and existing under the laws of DELAWARE whose address is 338 MAIN STREET, HYANNIS, MA 02601 (herein "Lender").

The following paragraph preceded by a checked box is applicable.

[X] WHEREAS, Borrower is indebted to Lender in the principal sum of $ 44,098.91, evidenced by Borrower's Loan Agreement dated NOVEMBER 15, 2002 and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on NOVEMBER 15, 2032;

[ ] WHEREAS, Borrower is indebted to Lender in the principal sum of $ ______, or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated ______ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ ______;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon, including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the County of BARNSTABLE State of Massachusetts:

THE LAND TOGETHER WITH THE BUILDINGS AND IMPROVEMENTS THEREON, SITUATED IN THE TOWN OF SANDWICH (SOUTH), COUNTY OF BARNSTABLE AND COMMONWEALTH OF MASSACHUSETTS, BEING BOUNDED AND DESCRIBED AS FOLLOWS:
LOT 108, LAND COURT SUBDIVISION PLAN 39567-C (SHEET 4)
SAID PREMISES ARE ALSO CONVEYED SUBJECT TO AN EASEMENT IN FAVOR OF NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, ET AL DATED SEPTEMBER 21, 1983 BEING DULY FILED WITH SAID DEEDS AT DOCUMENT NO. 321,319.
BEING THE SAME PROPERTY CONVEYED FROM DAN W. ADAMS TO DAN W. ADAMS AND HEIDI K. ADAMS, HUSBAND AND WIFE BY DEED RECORDED 9/4/98, IN CERTIFICATE 150012, AT DOCUMENT 738690, IN THE REGISTER'S OFFICE OF BARNSTABLE COUNTY, MASSACHUSETTS.
CURRENT DEED IN DOCUMENT #738690, CERTIFICATE #150012.
TAX MAP OR PARCEL ID NO.: MAP 1 LOT 20-155

which has the address of 16 HIGHFIELD DR, (Street) SANDWICH (City)

Massachusetts 02563 (herein "Property Address"); Sand 108 39567-C

MA001251

04-15-02 MTG

*A94227FF418SMTG9000MA00125 10**ADAMS * ORIGINAL

Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of the evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 7 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the Lender shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

20. **Homestead Waiver.** The undersigned release the homestead rights for themselves, their family, and any minor unmarried children, created by their declaration dated __________, recorded in ________ County Registry of Deeds, Book ______, Page ______.

21. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage if Lender is not obligated to refinance the debt or to make future advances.

22. **Arbitration Rider to Note.** The Arbitration Rider attached to and made part of the Note is hereby incorporated by reference and made part of this Mortgage.

**REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

The Note secured by the Mortgage has:

a Principal Sum of n/a a Period of Loan of n/a

a Rate of Interest of n/a Periodic Due Dates of n/a
which may be subject to change

IN WITNESS WHEREOF, Borrower has executed this Mortgage under Seal.

All Rights Reserved

[signature] -Borrower
Dan W. Adams

[signature] -Borrower
"Heidi K. Adams, His Wife I hereby waive any intgrest that I may have in the Property stated above."

COMMONWEALTH OF MASSACHUSETTS, BARNSTABLE County ss:

On this 15th day of November, 2002, before me personally appeared Dan W. Adams and Heidi K. Adams,

and acknowledge the foregoing to be their free act and deed.

My Commission expires

ROBERT P. KUHN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
October 10, 2008

[signature]
Notary Public

BARNSTABLE REGISTRY OF DEEDS

04-15-02 MTG

*A94227FF4165MTG9000MA0012540**ADAMS * ORIGINAL

Bk 17766 Pg 155 #117247
10-08-2003 @ 08:44a

498

Form 668 (Y)(c)
(Rev. October 2000)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #1
Lien Unit Phone: (617) 316-2575

Serial Number
40331658

For Optional Use by Recording Office

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer DAN ADAMS

Residence
15 HIGHFIELD DR
SANDWICH, MA 02563-2916

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1999 | 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 | 06/16/2003 | 07/16/2013 | 241283.47 |

Place of Filing
Registry of Deeds
Barnstable County
Barnstable, MA 02630

Total $ 241283.47

This notice was prepared and signed at Boston, MA, on this

the 01st day of October, 2003.

Signature [signature]
for DAVID ROBBERSON

Title
REVENUE OFFICER 21-04-3513
(508) 775-4074

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Form 668(Y)(c) (Rev. 10-00)
CAT. NO 60025X

Part 1 - Kept By Recording Office

BARNSTABLE REGISTRY OF DEEDS

Bk 19157 Pg133 #82066
10-21-2004 @ 01:20p

RPLIENRG

Commonwealth of Massachusetts Department of Revenue

# NOTICE OF MASSACHUSETTS TAX LIEN

*No.* 0530 3000 0020 1

*Pursuant to the provisions of Section 50 of Chapter 62C of the General Laws, notice is hereby given that there have been assessed against the following-named taxpayer taxes (including interest and penalties) which remain unpaid, and that the amount of said taxes is a lien in favor of the Commonwealth of Massachusetts upon all property and rights to property belonging to said taxpayer.*

ADAMS, DAN W 510443236 510443236 1125180
15 HIGHFIELD DR
SANDWICH MA 02563

| Tax Type | Period End Date | Date of Deemed Assessment | Balance Due |
|---|---|---|---|
| INCOME | 12-31-99 | | $2,516.72 |
| INCOME | 12-31-00 | | $2,533.51 |
| INCOME | 12-31-01 | | $2,021.80 |
| | | *TOTAL* | $7.[illegible] |

*PLACE OF FILING*

*Registry of Deeds* BARNSTABLE COUNTY, BARNSTABLE, MA

MDOR-Collections Bureau
P. O. Box 7021
Boston, MA 02204

Re: ADAMS, DAN W

Req. by: EDWARD MASON

*Signature* Joseph P. McDonough

*Title* *BUREAU CHIEF*

BARNSTABLE REGISTRY OF DEEDS

Total Pages: 1

Doc:999,369 04-20-2005 1:08
BARNSTABLE LAND COURT REGISTRY

Property Address:
15 HIGHFIELD DR, SANDWICH, 02563

**DISCHARGE OF MORTGAGE**

WASHINGTON MUTUAL - CLIENT 156 #:0044609592 "ADAMS" Lender ID:H02/002/0044609592
Barnstable, Massachusetts PIF: 03/28/2005

KNOW ALL MEN BY THESE PRESENTS that LONG BEACH MORTGAGE COMPANY whose address is 7255 BAYMEADOWS WAY, F1020, JACKSONVILLE, FL 32256 holder of a certain Mortgage, whose parties, dates and recording information are below, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said Mortgage.

Original Mortgagor: DAN W ADAMS AND HEIDI K. ADAMS
Original Mortgagee: LONG BEACH MORTGAGE COMPANY
Date Executed: 06/25/2002 Recorded: 07/02/2002 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 877.425
In the County of Barnstable, State of Massachusetts

Property Address: 15 HIGHFIELD DR, SANDWICH, MA 02563

IN WITNESSOF, the said LONG BEACH MORTGAGE COMPANY by its authorized officer, has hereunto set its corporate seal.

Ctf. 150012

LONG BEACH MORTGAGE COMPANY
On April 11th, 2005

By: [signature]
M Baggs, Assistant Vice-President

STATE OF Florida
COUNTY OF Duval

On April 11th, 2005, before me, the undersigned, a Notary Public in and for Duval in the State of Florida, personally appeared M Baggs, Assistant Vice-President, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

WITNESS my hand and official seal,
[signature]
Notary Expires: 3/09

Yolandra D. Johnson
Commission # DD401903
Expires March 1, 2009
Bonded Thru Fain Insurance, Inc. 800-385-7019

(This area for notarial seal)

"ML"ML WAMT"04/11/2005 03:03:34 PM" WAMU03WAMU000000000000000002448840" MABARGS" 0044609592 MASTATE_MORT_REL "ML"ML WAMT"

Recording Requested By:
WASHINGTON MUTUAL BANK FA
When Recorded Return To:

WASHINGTON MUTUAL
PO BOX 45179
JACKSONVILLE, FL 32232-5179

BARNSTABLE REGISTRY OF DEEDS

**...monwealth of Massach...**
**County of Barnstable**
**The Superior Court**

CIVIL DOCKET#: **BACV2005-00287**

Washingon Mutual Bank,
Plaintiff(s)
vs.

Dan W Adams,
Heidi K Adams,
Defendant(s)

## FINDING AND EX PARTE ORDER FOR APPROVAL OF ATTACHMENT

This cause came on to be heard upon an ex parte Motion for Approval of Attachment, and thereupon, upon consideration thereof, the Court hereby finds that:

1. There is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment approved herein over and above any liability insurance shown by the defendant to be available, and that either

2. The person of the defendant is not subject to the jurisdiction of the Court, * or

3. There is a clear danger that the defendant if notified in advance of attachment of his property will remove it from the Commonwealth or conceal or convey it,* or

4. There is immediate danger that the defendant will damage, destroy or waste the property to be attached. *

Therefore, the Court hereby **approves** attachment in the amount of

$ 345,000.00

Three hundred Forty five thousand and 00/100 Dollars

Justice of the Superior Court

Entered: 05/25/2005

***NOTE: *Strike out findings not applicable.***



# Commonwealth of Massachusetts

BARNSTABLE, ss.

A TRUE COPY ATTEST:

SUPERIOR COURT

No. 05-287

Shaun A. Marshall
DEPUTY SHERIFF

Washington Mutual Bank, Plaintiff

vs.

Dan W. Adams & Heidi K. Adams, Defendant

## WRIT OF ATTACHMENT

To the sheriffs of our several counties or their deputies:

WE COMMAND YOU to attach the goods or estate of defendant , Dan W. Adams & Heidi K. Adams, of Sandwich, Massachusetts, to the value of $ 345,000.00, (the amount authorized), as prayed for by plaintiff, Washington Mutual Bank, of Seattle, WA whose attorney is MaryEllen Manganelli of Bodkey, Richardson & Watkins One Post Office Square, Boston, MA in an action brought by said plaintiff , Washington Mutual Bank, against said defendant , Dan W. Adams & Heidi K. Adams, in the Superior Court for Barnstable County, and make due return of this writ with your doings thereon.

The complaint in this case was filed on May 25, 2005, 19 .

This attachment was approved on May 25, 2005, 19 , by Robert C. Rufo, J., in the amount of $ 345,000.00.

BARBARA J. ROUSE

Witness, , Esquire, at Barnstable, the 26th day of May, 19 2005.

Scott W. Nickerson
Clerk

**PROOF OF ATTACHMENT**

and Service

Barnstable ss. **May 26, 2005**

By virtue of this writ, I this day at **11:15am** attached all the right, title and interest that the within named defendants **Dan W. Adams and Heidi K. Adams** now **have** not exempt by law from levy or attachment, in and to real estate registered with the Massachusetts Land Court and described in **Certificate of Title #150012** at the Barnstable Registry District of the Land Court. And afterward on **May 26, 2005,** I deposited a true and attested copy of this writ, with my said attachment endorsed thereon at the said Land Court.

And afterward on **June 1, 2005** I mailed via U.S. First Class Mail, a true and attested copy of this writ, with my said attachment endorsed thereon to the said defendants at **15 Highfield Drive, Sandwich, MA 02563.**

| | |
|---|---|
| Service | 40.00 |
| Copies | 15.00 |
| Travel | 3.20 |
| Postage & Handling | 4.50 |
| Registry Fee | 75.00 |
| | 137.70 |

Jean A. Marshall

Jean A. Marshall
Deputy Sheriff

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Washington Mutual Bank

**DEFENDANTS** Dan W. Adams; Heidi K. Adams; United States of America; Commonwealth of Massachusetts Dept. of Revenue; Delta Funding Corporation; Beneficial Massachusetts Inc.

**(b)** County of Residence of First Listed Plaintiff Seattle, WA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Barnstable
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) (617) 368-2500
Donn A. Randall; J. Patrick Kennedy
Bulkley, Richardson and Gelinas, LLP
One Post Office Sq., Boston, MA 02109

Attorneys (If Known) Not known

05-11686 WGY

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☒ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**): 28 U.S.C. secs. 2201(a) and 2410(a)

Brief description of cause: Action to reinstate plaintiff's first mortgage position in real property

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): Washington Mutual Bank v. Dan W. Adams, Barnstable Superior Ct.
JUDGE DOCKET NUMBER 2005-00287

DATE Aug. 15, 2005 SIGNATURE OF ATTORNEY OF RECORD J. Patrick Kennedy BBO# 565778

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Washington Mutual Bank v. Dan W. Adams, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

[ ] I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

[ ] II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

[X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

[ ] IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

[ ] V. 150, 152, 153.

05-11686WGY

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
Washington Mutual Bank v. Dan W. Adams, et al., Barnstable Superior Court, Civil Action No. 2005-00287

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ] NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES [ ] NO [X]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ] NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ] NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [X] NO [ ]

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division [X] Central Division [ ] Western Division [ ]

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [ ] Central Division [ ] Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions) N/A

YES [ ] NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME J. Patrick Kennedy [signature] BBO #565778
ADDRESS Bulkley, Richardson and Gelinas, LLP, One Post Office Square, Boston, MA 02109
TELEPHONE NO. (617) 368-2500

(CategoryForm.wpd - 5/2/05)